UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

|  |  |  |
|---|---|---|
| IN RE: DARVOCET, DARVON AND PROPOXYPHENE PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) | Master File No. 2: 11-md-2226-DCR MDL Docket No. 2226 |
| *Gilbert, et al., v. Eli Lilly & Co., et al.,* | ) | Civil Action No. 2: 11-184-DCR |
| *Hunsucker v. Xanodyne Pharm., et al.,* | ) | Civil Action No. 2: 11-185-DCR |
| *West, et al., v. Qualitest Pharm., et al.,* | ) | Civil Action No. 2: 11-186-DCR |
| *Kellehar, et al., v. Xanodyne Pharm.,* | ) | Civil Action No. 2: 11-191-DCR |
| *Hallaway, et al., v. Eli Lilly & Co., et al.,* | ) | Civil Action No. 2: 11-195-DCR |
| *Lowe, et al., v. Xanodyne Pharm., Inc.,* | ) | Civil Action No. 2: 11-196-DCR |
| *Coney, et al., v. Xanodyne Pharm., et al.,* | ) | Civil Action No. 2: 11-197-DCR |
| *Rogers v. Xanodyne Pharm., et al.,* | ) | Civil Action No. 2: 11-200-DCR |
| *Oniate, et al., v. Eli Lilly & Co., et al.,* | ) | Civil Action No. 2: 11-206-DCR |
| *Simpson v. Qualitest Pharm., et al.,* | ) | Civil Action No. 2: 11-210-DCR |
| *Lynch v. Xanodyne Pharm., et al.,* | ) | Civil Action No. 2: 11-213-DCR |
| *Turner, et al., v. Watson Pharm., et al.,* | ) | Civil Action No. 2: 11-221-DCR |
| *Dickerson, et al., v. Eli Lilly & Co., et al.,* | ) | Civil Action No. 2: 11-295-DCR |
| *Sandel v. Eli Lilly & Co., et al.,* | ) | Civil Action No. 2: 11-325-DCR |
|  | ) |  |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT ENDO PHARMACEUTICALS HOLDINGS, INC.'S
AND DEFENDANT ENDO PHARMACEUTICALS, INC.'S
MOTION TO DISMISS**

This matter is pending before the Court for further consideration of the motion to

dismiss filed by Defendants Endo Pharmaceuticals Holdings, Inc. and Endo Pharmaceuticals,

Inc. (jointly referred to as "the Endo Defendants"). [MDL Record No. 466]  In these

fourteen cases, the Endo Defendants argue that the claims asserted against them should be

dismissed because the Court lacks personal jurisdiction.  The Court agrees and will grant the motion for the reasons explained below.

## I.

This multidistrict litigation arises out of injuries allegedly caused by the prescription pain medications containing propoxyphene.  Propoxyphene products were withdrawn from the market on November 19, 2010.  Approximately eleven days later, the Endo Defendants acquired Generics International (US Parent), Inc., which was the owner of three companies that had previously manufactured or distributed propoxyphene: Vintage Pharmaceuticals, LLC; Generics Bidco I, LLC; and Generics Bidco II, LLC.

In their complaints, most of the plaintiffs made allegations identical or substantially similar to the following:

> 44.    On or about December 1, 2010, Defendant Endo Holdings acquired Defendant Generics US, Defendant Generics Bidco I, Defendant Generics Bidco II and Defendant Generics US Parent, and presumably indirectly acquired through one or all of them Defendant Qualitest, Defendant Vintage, Defendant Propst, Defendant Brenn Distribution, Defendant Brenn Manufacturing and/or Defendant Vintage LLC.

> 45.    The businesses of Defendant Qualitest, Defendant Vintage, Defendant Propst, Defendant Brenn Distribution, Defendant Brenn Manufacturing and/or Defendant Vintage LLC may have been combined thereafter into a single business unit with Defendant Endo.

> 46.    The extent to which Defendant Endo and/or Defendant Endo Holdings may have assumed responsibility for the acts, omissions or liability of other

Generic Qualitest Defendants, contractually or otherwise, is unknown at this time, and Plaintiff requires discovery as to this issue.[1]

[*E.g.*, Civil Action No. 2: 11-184-DCR, Record No. 25, pp. 8-9]  The plaintiffs thus maintain that the Endo Defendants may be legally responsible for claims against their subsidiaries that manufactured or distributed propoxyphene products.

The Endo Defendants filed the current motion to dismiss in twenty-three cases.  In nine of these cases, they did not raise the threshold issue of personal jurisdiction.  [*See* MDL Record No. 466-1, p. 15 n.10]  The Court has already granted the motion in those nine cases, concluding that, because the plaintiffs' claims against manufacturers of generic propoxyphene were preempted under the Supreme Court's holding in *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011), the Endo Defendants could have no derivative liability for the acts of their generic-manufacturer subsidiaries.  [Record No. 1589]  Regarding the remaining fourteen cases, the Endo Defendants moved to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), and the Court now finds that the motion should be granted in those cases as well.

## II.

Pursuant to the statute governing multidistrict litigation, 28 U.S.C. § 1407, a transferee court possesses the powers of the transferor court.  *Howard v. Sulzer Orthopedics, Inc.*, 382

---

[1]  Plaintiffs Oniate and Turner alleged that the Endo Defendants were directly involved in the manufacture or sale of propoxyphene products.  [*See* Civil Action No. 2: 11-206-DCR, Record No. 1, p. 4 ¶ 10; Civil Action No. 2: 11-221-DCR, Record No. 22, p. 35 ¶ 18]  In their joint response to the instant motion, however, the plaintiffs do not contend that the Endo Defendants themselves produced or distributed propoxyphene.

F. App'x 437, 442 (6th Cir. 2010). Thus, this Court has personal jurisdiction over the Endo Defendants only to the extent such jurisdiction was proper in the states from which the individual cases were transferred: Indiana, Louisiana, Minnesota, Mississippi, Ohio, Oklahoma, South Carolina, Tennessee, and Texas. *See id.*

The burden of establishing personal jurisdiction is on the plaintiffs. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). To survive a motion to dismiss under Rule 12(b)(2), the plaintiffs must make a two-part prima facie showing: first, that "jurisdiction is proper under a long-arm statute or other jurisdictional rule of . . . the forum state"; and second, that "the Due Process Clause also allows for jurisdiction under the facts of the case." *Id.* If either part of the test is not met, the Court's analysis ends. *See id.* at 711-12 ("[I]f jurisdiction is not proper under the Due Process Clause[,] it is unnecessary to analyze jurisdiction under the state long-arm statute, and vice-versa.").

The prima facie burden is "'relatively slight.'" *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1989)). In determining whether a plaintiff has made the necessary showing, the Court must view the parties' submissions "in a light most favorable to the plaintiff," disregarding any contrary assertions by the defendant.[2] *Id.* (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). Nevertheless, "the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the

---

[2] The Court may properly consider "undisputed factual assertions" made by a defendant. *Conn*, 667 F.3d at 711.

court has jurisdiction." *Theunissen*, 935 F.2d at 1458; *see also Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006) (for purposes of a 12(b)(2) motion, a prima facie case consists of "specific facts that support a finding of jurisdiction"). That jurisdiction may be either of two types: specific or general. *Conn*, 667 F.3d at 712-13.

### A.      Specific Jurisdiction

A court has specific jurisdiction over a defendant if the plaintiff's claims "arise from the defendant's contacts with the forum state." *Id.* at 713. The Sixth Circuit has identified three elements that must be present to support a finding of specific jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.* Corporate entities are considered separately for purposes of the personal-jurisdiction analysis; "a company does not purposefully avail itself of the privilege of doing business in the forum state merely by owning a corporation subject to jurisdiction." *Niemi v. NHK Spring Co.*, 543 F.3d 294, 308 (6th Cir. 2008) (citing *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1273-74 (6th Cir. 1998)). And as a general matter, "a parent corporation 'is not responsible for the pre-acquisition liabilities of its wholly-owned subsidiary.'" *Morgan v. Powe Timber Co.*, 367 F. Supp. 2d 1032, 1035 (S.D. Miss. 2005) (quoting *Binder v. Bristol-Myers Squibb, Co.*, 184 F. Supp. 2d 762, 773 (N.D. Ill. 2001)).

Parent corporations are sometimes subject to personal jurisdiction based on the actions of their subsidiaries, however.  The Fifth Circuit has explained that the "presumption of corporate separateness" between a parent and its subsidiary "may be overcome by clear evidence" that the parent exerts such control over the subsidiary as to make the latter "its agent or alter ego."  *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999); *see also, e.g.*, *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008) (adopting alter-ego theory of personal jurisdiction in parent-subsidiary context); *Wesleyan Pension Fund v. First Albany Corp.*, 964 F. Supp. 1255, 1261 (S.D. Ind. 1997) ("institutional independence" of parent and subsidiary "is only a presumption and may be overcome by clear evidence").  This "clear evidence" standard "requires an additional or a 'plus' factor, 'something beyond the subsidiary's mere presence within the bosom of the corporate family.'"  *Dickson Marine*, 179 F.3d at 338 (quoting *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 465-66 (1st Cir. 1990)).

Here, according to the plaintiffs, "[s]pecific jurisdiction over [the] Endo Defendants can be established through successor liability or other liability theories." [Record No. 901, p. 19]  In other words, they ask the Court to exercise jurisdiction over the Endo Defendants based on other companies' contacts with the forum states.  [*See id.*, pp. 19-20]  Yet, while the plaintiffs acknowledge that clear evidence is required in this instance [*see id.*, p. 20], they fail to present any evidence whatsoever.  Instead, they direct the Court to the following statement in their complaints: "The extent to which Defendant Endo and/or Defendant Endo Holdings may have assumed responsibility for the acts, omissions or liability of other

-6-

Generic Qualitest Defendants, contractually or otherwise, is unknown at this time, and Plaintiff requires discovery as to this issue." [*Id.* (quoting representative complaint)] As set forth in the complaints, the plaintiffs assert, the "Endo Defendants could have assumed successor liability through their acquisition of [the] Generics Defendants." [*Id.* (citing complaint)] The plaintiffs declare that "these facts" must be taken as true and are sufficient to establish a prima facie case of specific jurisdiction. [*Id.*; *see also id.*, p. 22 ("The Endo Defendants, through their subsidiaries, the Generics Defendants, purposefully availed themselves into each forum state through manufacture and/or distribution of the subject drug. . . . This purposeful availment and successor liability . . . establish a prima facie case of personal jurisdiction . . . ." (citing complaint))]

But what "facts"? The portion of the complaint relied upon by the plaintiffs merely implies that the Endo Defendants "may have" somehow assumed the liabilities of their subsidiaries; the only factual assertion it contains is that the plaintiffs do not have the information they need to establish personal jurisdiction. [*Id.*] Thus, even if the plaintiffs were permitted to "stand on [their] pleadings," *Theunissen*, 935 F.2d at 1458, they would fall woefully short of the necessary prima facie showing.[3]

Furthermore, notwithstanding the plaintiffs' repeated references to successor liability, the law is clear that "if the original entity still exists, there is no successor — and no

---

[3] In any event, as the Court explained in its previous opinion, the Endo Defendants are not subject to derivative liability for actions taken by their subsidiaries because the subsidiaries themselves are not liable under *Mensing*. [Record No. 1589, p. 6]

successor liability." *In re Welding Fume Prods. Liab. Litig.*, No. 1:03-CV-17000, 2010 U.S. Dist. LEXIS 57859, at *42 (N.D. Ohio June 11, 2010); *see id.* at *43 n.66 (citing cases from Texas and Indiana, among other jurisdictions). As the plaintiffs are well aware, the Endo Defendants' subsidiaries still exist; the plaintiffs sued them, too. The concern underlying successor liability — that claimants will be "left without recourse against an entity simply because the entity sells all of its assets or changes its corporate form," *id.* at *42 — thus is not present here, and rules of successor liability are inapplicable.

In short, the plaintiffs have not sufficiently alleged that the Court has specific jurisdiction over the Endo Defendants, much less demonstrated an adequate factual basis for such a finding. Nor is the Court persuaded by the plaintiffs' insistence that jurisdictional discovery is needed, since the lenient prima facie standard is premised on the assumption that plaintiffs will not have had the benefit of such discovery.[4] *See, e.g.*, *Air Prods. & Controls*, 503 F.3d at 549 ("Where . . . the district court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, rather than resolving the motion after either an evidentiary hearing or limited discovery, . . . the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal."). Because the plaintiffs have not presented "specific facts" establishing that their claims arise out of

---

[4] To the extent the plaintiffs suggest that *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324 (6th Cir. 2009), indicates otherwise, their argument is misplaced. In *Metcalfe*, the plaintiffs had already made a prima facie showing of personal jurisdiction, and the Sixth Circuit found that discovery was appropriate "to help facilitate the [ultimate] resolution of the jurisdictional issue." *Id.* at 336; *see id.* at 337 (concluding that plaintiffs had made a prima facie showing and remanding "to allow the [plaintiffs] to conduct jurisdictional discovery before the District Court conclusively decides whether exercising jurisdiction over [the defendant] is permissible.").

contacts the Endo Defendants have with any of the subject jurisdictions, specific jurisdiction is lacking.  *Conn*, 667 F.3d at 711; *see id.* at 713.

### B.  General Jurisdiction

The Court has general jurisdiction over the Endo Defendants only if "their affiliations with the [forum] [s]tate[s] are so 'continuous and systematic' as to render them essentially at home in" those states.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).  To satisfy the Due Process Clause, a defendant must have certain "'minimum contact[s]' with the forum state so that finding personal jurisdiction does not 'offend traditional notions of fair play and substantial justice.'"  *Conn*, 667 F.3d at 712 (alteration in original) (quoting *Third Nat'l Bank v. WEDGE Grp., Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)).  Due process requires contacts "so pervasive" that they support a finding of jurisdiction "even [though] the suit has nothing to do with those contacts."  *Id.* at 718 (internal quotation marks omitted).  Like specific jurisdiction, general jurisdiction must be proper not only under the Due Process Clause, but also under the long-arm statutes of the forum state.[5]  *See id.* at 711.

The plaintiffs offer two possible grounds for general jurisdiction.  First, they reiterate their earlier erroneous contention that "under a theory of successor liability, [the] Endo

---

[5]  The parties agree that the long-arm statutes of Indiana, Louisiana, Minnesota, Mississippi, Oklahoma, South Carolina, Tennessee, and Texas are coextensive with the Due Process Clause. [*See* Record No. 466-1, p. 15 & n.11; Record No. 901, p. 17 & n.13]  Ohio's statute, however, does not "reach[] to the limits of the Due Process Clause, and the analysis of Ohio's long-arm statute is a particularized inquiry wholly separate from the analysis of Federal Due Process law."  *Conn*, 667 F.3d at 712.  The distinction is ultimately irrelevant here, since a failure of jurisdiction under the Due Process Clause renders moot the applicability of state statutes.  *See id.* at 711-12.

Defendants can be liable for the acts of [their] subsidiaries." [Record No. 901, p. 24]  As before, however, the plaintiffs fail to present any specific facts that would support a finding of jurisdiction based on the Endo Defendants' relationship to their subsidiaries.[6]  And as explained previously, successor liability does not apply here.  *See In re Welding Fume Prods. Liab. Litig.*, 2010 U.S. Dist. LEXIS 57859, at *42.  This argument thus does not merit further discussion.

The plaintiffs also argue that jurisdiction is proper based on the presence of Endo Pharmaceuticals sales representatives in the forum states, as well as the sales revenues that "presumably" follow.[7]  [Record No. 901, p. 24]  They concede, however, that "simple placement of a product into the 'stream of commerce'" is not enough to establish jurisdiction over the manufacturer where that product is unrelated to the plaintiff's claims.  [*Id.*]  To hold otherwise, the Supreme Court recently explained, would

> elide[] the essential difference between case-specific and all-purpose (general) jurisdiction.  Flow of a manufacturer's products into the forum . . . may bolster an affiliation germane to *specific* jurisdiction.  But ties serving to bolster the exercise of specific jurisdiction do not warrant a determination that, based on those ties, the forum has *general* jurisdiction over a defendant.

*Goodyear*, 131 S. Ct. at 2855 (citation omitted).  The *Goodyear* Court rejected a "sprawling view of general jurisdiction" under which "any substantial manufacturer or seller of goods

---

[6]  The plaintiffs acknowledge their failure, admitting that they "are not privy to the information required to present evidence needed to meet their burden."  [Record No. 901, p. 23]

[7]  The information concerning sales representatives comes from the Affidavit of Alan G. Levin, Chief Financial Officer of Endo Pharmaceuticals Holdings, Inc., which was provided by the Endo Defendants in support of their motion to dismiss.  [*See* Record No. 901, p. 24 (citing Endo Defendants' brief and Levin Affidavit)]

would be amenable to suit, on any claim for relief, wherever its products are distributed." *Id.* at 2856. Thus, the fact that some (non-propoxyphene) products manufactured by the Endo Defendants may have been sold in the forum states is not dispositive, as such products did not give rise to the plaintiffs' alleged injuries.

Moreover, the mere presence of a corporation's sales representatives in a forum state is insufficient to establish personal jurisdiction over the company. *See, e.g.*, *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1200 (4th Cir. 1993) (finding no general jurisdiction where defendant maintained "17-21 promotional representatives and two district managers" in forum state, among other contacts; "advertising and solicitation activities alone do not constitute the 'minimum contacts' required for general jurisdiction"); *Seitz v. Envirotech Sys. Worldwide Inc.*, 513 F. Supp. 2d 855, 863 (S.D. Tex. 2007) (citing *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003)) ("The conclusory assertion that [the defendant] has appointed a Texas sales representative, with no additional facts, is insufficient to make a prima facie showing of personal jurisdiction."). The fact that Endo Pharmaceuticals is registered to do business in four of the forum states is likewise of no great significance. *See Pittock v. Otis Elevator Co.*, 8 F.3d 325, 328-29 (6th Cir. 1993) (defendant's designation of agent for service of process in forum state does not relieve plaintiff of burden of establishing minimum contacts); *Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179 (5th Cir. 1992) (registration to do business and appointment of agent for service of process in forum state did not support finding of general jurisdiction); *Samuelson v. Honeywell*, 863 F. Supp. 1503, 1507 (E.D. Okla. 1994) (defendant's "compliance . . . with

-11-

Oklahoma statutory requirements for conducting business in Oklahoma does not automatically subject [the defendant] to the jurisdiction of the State of Oklahoma in a suit unrelated to its Oklahoma contacts"). Without more, these factors do not warrant the Court's exercise of jurisdiction over the Endo Defendants.

Finally, the Court rejects the plaintiffs' contention that because they "were not strangers in the forum [s]tates, the requirement for substantial contacts is not as rigorous as a situation with an out-of-state plaintiff." [Record No. 901, p. 26; *see id.* at 25] As the Supreme Court noted in *Goodyear*, "general jurisdiction to adjudicate has . . . never been based on the plaintiff's relationship to the forum." 131 S. Ct. at 2857 n.5. Rather, "[w]hen a defendant's act outside the forum causes injury in the forum, . . . a plaintiff's residence in the forum may strengthen the case for the exercise of *specific jurisdiction*." *Id.* Whether the plaintiffs reside in the forum states is thus irrelevant for purposes of general jurisdiction.

### III.

The plaintiffs have failed to demonstrate that the Endo Defendants are subject to specific or general jurisdiction in any of the forum states. As a result, this Court also lacks personal jurisdiction over the Endo Defendants, and dismissal under Rule 12(b)(2) is appropriate. Accordingly, it is hereby

**ORDERED** that the motion to dismiss for lack of personal jurisdiction filed by Defendants Endo Pharmaceuticals Holdings, Inc. and Endo Pharmaceuticals, Inc. [MDL Record No. 466] is **GRANTED**. The claims asserted against Defendants Endo Pharmaceuticals Holdings Inc. and Endo Pharmaceuticals Inc. in the following fourteen

actions are **DISMISSED**, without prejudice: Civil Action No. 2: 11-184-DCR, Civil Action No. 2: 11-185-DCR, Civil Action No. 2: 11-186-DCR, Civil Action No. 2: 11-191-DCR, Civil Action No. 2: 11-195-DCR, Civil Action No. 2: 11-196-DCR, Civil Action No. 2: 11-197-DCR, Civil Action No. 2: 11-200-DCR, Civil Action No. 2: 11-206-DCR, Civil Action No. 2: 11-210-DCR, Civil Action No. 2: 11-213-DCR, Civil Action No. 2: 11-221-DCR, Civil Action No. 2: 11-295-DCR, and Civil Action No. 2: 11-325-DCR.

This 18th day of April, 2012.



Signed By:

*Danny C. Reeves*  DCR

**United States District Judge**